Thank you, Your Honor. Good morning. Xander Lopez of the Federal Defenders on behalf of Mr. Rangel-Rodriguez. Mr. Rangel's sentence must be reversed and remanded. Following two successful appeals to this Court, Mr. Rangel was resentenced to a term of imprisonment almost two years above his original sentence of 168 months, a sentence that both the District Court and the government found to be an appropriate sentence at the time of the original sentencing. Did we reach that? Excuse me, Your Honor? Did we reach the sentencing issues on our previous remand? No, Your Honor. The first appeal... And wasn't there a change in his criminal history in between? That's correct, Your Honor. Why isn't that enough so that it's not vindictive sentencing? Well, Your Honor, there is procedural error here because the only reason for the enhancement was this one factor, this intervening sentence. That's a factor. Why doesn't that prevent vindictive sentencing reversal? Your Honor, actually, it's procedural error.  Why? Yes, calculate the guideline range correctly, but the guidelines are only one factor of all the 3553A factors. In this case, it's clear that the District Court only relied on this one intervening sentence and nothing else. It was also procedural error because the District Court held that he was presuming reasonableness based on this within guideline sentence. It was within guideline, right? Of the newly calculated range. And haven't we said that if it's within guideline, it doesn't take a whole lot of chatter to justify it under CARTI and 3553? Yes, Your Honor, but the problem in this case is two-pronged. One, the court already indicated that in this particular case, based on the conduct of the defendant, a 168-month sentence was sufficient and no greater than necessary. So here we have two inconsistent sentencing, one of 168 and one of 188. Also, in this case, we have a defense attorney who specifically asked the judge, Your Honor, everything in this case is the same from the original sentence. You knew of the original, you knew he had been convicted of the illegal reentry. You knew that all of the conduct, all of the conduct inherent in this 1326 conviction at the time of the original sentence. And with a virtual certainty, you knew that he would be sentenced to more than 13 months. But a defendant's not entitled to his original sentence if he appeals and it comes back. All he's entitled to is not to be punished more for appealing. That's correct. The court's still obligated to follow CARTI and follow and review all of the factors under 3553, and here it wasn't done. The defense counsel asked, Your Honor, why isn't 168 months no longer sufficient and no greater than necessary since Your Honor previously found that that was an appropriate sentence? Why is it, why is this intervening sentence and the sentence that we knew was going to happen, why is that so significant? Let me ask you about one other issue. Why isn't, why aren't the aliens in the trunk enough to justify the two-level increase, quite aside from the restraints and the overloading? Your Honor, what was found by the district court was the two-level increase applied because the aliens were unrestrained and two aliens were found in the trunk. There was no evidence presented that the aliens, that either the trunk was an airtight container or that the aliens would not be able to get out on their own. And there was nothing, it was just a conclusory statement that they were in the trunk and thus there was a risk. But there was no other information. Aren't there state laws that prohibit putting children or passengers in the trunk of a car? I'm not aware, Your Honor. I'm assuming there probably is. If there aren't, it's probably common law negligence. But isn't it common sense that it's dangerous to put people in the trunk of a car under the hatch and batten it down? Yes, but here there weren't any children. And it's also state law. Well, how do we know? He was running a transportation factory. He had, what, he had five or six cars working for him. He was managing the whole affair. He knew that a lot of children, a lot of people were coming in his cars and that they were being packed very tight in the cars to get as many as possible. They were getting paid per capita. First, I'd like to focus on the fact that the district court was relying on two incidents, one in March of 2002 and one in June of 2002 in determining that the substantial risk applied. And neither of those cases were their children. And the only reason that the court found that there was substantial risk was because of being unrestrained and two of them being in the trunk. And my argument is that there was no evidence presented either by the government or the pre-sentence report that this was an airtight trunk or that the two aliens in that trunk could not get out. I thought you just, the only people that rode in the trunk of a car were dead people and illegal aliens. I mean, who gets in the trunk? Right. Well, in Miguel, the court found that that was a trunk. And they found that it wasn't per se. Well, 201.1 says trunk, doesn't it? It doesn't say airtight trunk. Correct. But in that circumstance, the court said even though it was a trunk, there was evidence that the aliens could probably get out by themselves and it wasn't an airtight container. Which, did we say in some case that you didn't get the two-level adjustment for the trunk where it wasn't airtight? Is that what you're saying? Excuse me, Your Honor. Do we have in Miguel, did we say, well, even though it was a trunk, there's no increase because it wasn't airtight? In there, the government was saying this is a trunk. And the court said that may be true. That was a hatchback, wasn't it? The court found it was a trunk, but it was more similar to a hatchback because the aliens, there was evidence that the aliens could get out from the back seat of the car. It was a sedan. Well, there's no evidence saying that here. All we know is trunk. That's correct. And the argument is, Your Honor, that what's required is more information that there was substantial risk of being in the trunk. I don't think so. I looked at Miguel last night and I'm looking at it again now. It goes on for a while, but I thought it was a hatchback with the flimsy plastic lid down so that thieves can't see that you've got your cameras in the hatchback. I think that was Dixon, Your Honor. And then in Miguel at pinpoint site 1155, the government makes the argument that it was a trunk. Oh, I see. And the court says that although they're technically correct that it was a trunk, there was evidence to show that the aliens could get out of the trunk. But the back seat was pushed down, they say, so it was like a hatchback. Correct. So this isn't a trunk where you just get in and out of the trunk from the road. This is a trunk where you push the back seat down and it turns into a hatchback. Right. It was just a conclusive statement that there was a trunk. There was no evidence that the aliens could not get out of the trunk on their own. And I see that I only have one minute. You may save it for rebuttal. Thank you. Good morning. Erlano Gutierrez for the United States. Your Honor, there are two initial analyses that need to be undertaken. There is no presumption of vindictiveness because the court actually stated what its reasons were. And on the records, on no fewer than three occasions, it said that it was taking into account the totality of the circumstances under 3553 and that the calculations under the guidelines had changed. And it was because of those changed calculations is why the court, the district court, did, in fact, increase the sentence by 20 months. Could you help me on something that's bothering me here? Yes, sir. On these two-level adjustments, courts have mentioned various things, and this judge mentioned various things. He mentioned that the passengers were unrestrained. And I was thinking, boy, any family with a husband, wife, and three children, when they get in a cab, there's likely to be somebody sitting on somebody's lap without a seat belt. That doesn't sound like two-level adjustment if they happen to be on there committing some sort of felony. Likewise, for the overloading, you take a bunch of kids home from soccer practice, you're likely to have more people in the car than the specified passenger load. How much overloading and lack of restraint do you need, or do those things even legitimately count under the two-level adjustment guideline? Oh, it would be the government's purchase. They most certainly do count, Your Honor. So if the people coming home from soccer practice are in the course of committing a felony, like if they're illegal aliens having been deported, so it's a 1326, they all get a two-level adjustment because they're driving home from soccer practice with one of the kids' friends? Well, not just one of the kids were unrestrained. If everybody was unrestrained but for one or two of the children, that might not even be applicable here. Does anybody not wearing seat belts mean two-level adjustment? I think given the totality of circumstances here, there were a number of combinations, a number of factors that combined to make it unsafe overall. I'm trying to sort them out one by one. The trunk guideline says trunk. You've got trunk here. But the judge also mentioned no seat belts, and I think he mentioned beyond the specified number, and I was concerned about the seat belts for the reason I just told you. Every time you've got an extra person or two in the car and somebody rides on somebody's lap, and the overloading, gosh, every time you've got a husband, wife, and three kids getting in a cab and the cabbie accepts them, you've got overloading. Now, I once saw a van that tipped over on a freeway in California because it was like a seven-passenger van and it had 15 or 20 people in it, so it wallowed. That I can see, but if it's just one more or two more than the specified load, that's enough for the two-level adjustment? I think by itself reasonably it wouldn't be enough, Your Honor. But often what alien smugglers do is they hide them below the window line, on the floor unrestrained, in order so they don't appear overloaded to Border Patrol. Well, you don't get the two-level adjustment just because you're an alien smuggler. There's a guideline for alien smuggler. True, but for creating a dangerous situation and circumstances that are peculiar to alien smuggling, they often modify the suspension. They do a number of modifications to the car. They make these people transport it in a way that's altogether, under the trial and error circumstances, dangerous. Well, if you modify the suspension, that can make it less dangerous. What you do is you put in heavy-duty shocks so you can carry the extra load. It makes the car wallow less. What they do is they have the cars ride very high when they're not laden. When they're full of aliens, they sink to a more normal appearance. Counsel, I have a slightly different question on the same topic, and that is this defendant was not the driver of the cars. He was the organizer of the operation. And as far as I can tell from the judge's sentencing and from what we have, he didn't load people into the cars himself. So was the fact that people were put in the trunk and so on and so forth a reasonably foreseeable risk from his point of view so that he would be responsible for the bad methods used or dangerous methods used by his drivers? Yes. There are a number of circumstances in this case that point to that, Your Honor. He was the leader organizer. He was the one arranging for the loads, the number of loads. He was contacting the drivers when they were needed, and he was even providing them with the vehicle that was needed or going to be used for that load that he previously procured. But there's no evidence that the vehicles themselves were unusually dangerous and that's not what the district court relied on for sentencing. They were cars with trunks, and you could drive them safely or unsafely. True, but, Your Honor, when you, for example, are contracting with some illegal aliens to transport 12 or 16 of them in a load and you send a car that only has a rated capacity of four or five, then you are aware that they're going to stack them in below the window line and create a dangerous situation when they have an overloaded vehicle driving on the highway with people who are unrestrained on the floor. That actually is not what the court relied on at the most recent sentencing. The most recent sentencing relied on that they were transported in the trunk of a vehicle and in a van without any restraints. So do we get to look back at the previous sentencings for additional reasons or do we have to rely on what the court said this time? I think as a de novo review, we should rely on what the court said this time. The court took into consideration the arguments of the parties that talked about an aiding and abetting theory of how he was responsible for the actual load because he organized it and since he created the situation where these people would be driving cars above their rated capacity on a regular basis time and time again, that those factors in and of themselves contributed to the necessity for the enhancement. Did he arrange for the number of aliens and number of cars on a particular trip? His drivers are merely hired for just being drivers. He called them on a pager and would only call them when he needed a driver and he would have drivers taken from the border to another location and have other drivers to other locations. You didn't answer my question at all. I said, did he arrange for the number of aliens and number of cars? The record shows that he was the one in charge as the leader organized and the drivers had no determination factor in how many aliens were getting into the car. It was him. Well, one of them said a 280Z. I don't think it was made that year so that must be an error but did he know which car it would be and how many aliens would go in it? The record showed that he had a fleet of 19 cars and he would provide the cars to the drivers so he was aware of the type of car that was being provided and the number of aliens that were going to be coming to that car. That's what I'm trying to find out. Was there evidence he was aware? I mean, if I get a cab at the airport and I've got my wife and three kids and lots of luggage with me, it would be nice if the dispatcher sent a van or some large vehicle but if the dispatcher calls for a cab, he doesn't really know whether it's going to be like that or whether it's going to be a little sedan. It's our position the fact that he was in control of the vehicles, the drivers and the organizational part of it as the leader that he knew full well that the cars would be overloaded. He was trying to maximize his profits more so than accommodate the comfort of the aliens. Well, let me ask you something else about the seatbelts. Let's imagine an alien smuggler who is bringing in 50 people and what he does is he arranges a 50-seat school bus, figuring everybody thinks school buses are real innocent, nobody bothers them, and they've got lots of seats. Only school buses don't have seatbelts usually. Does he get the two-level adjustment because there are no seatbelts? I would say yes, Your Honor, because in that situation that anybody driving by would see that it was not full of children but people who were perhaps appearing like they just crossed over the border carrying buckets of water and such. Do you think two-level adjustment is for any alien smuggling? You don't think it's for trunk or severe overloading or anything like that? No, of course it's just for the conditions that these people put the illegal aliens in that causes them to be in danger. Overloading a van is dangerous because it can result in the tires being overheating and flipping over. So these circumstances that these aliens... And my school bus? I think in that situation they probably wouldn't have them sitting in the seats because they'd be easily obscured. Of course they do. It's got enough seats. They sit in a seat. But there are no seatbelts. If they were sitting in the rated capacity and intended purpose of that bus, I would say it probably wouldn't be applicable, Your Honor. First you told me it would be, and I think you were saying because people would see it's not children. And then I was thinking, at Mount McKinley National Park, they use school buses to haul the tourists, and they're not children either. They're usually elderly people. But the vehicle's being used as it's intended, how it's allowed to be used normally. People are sitting in the seats, not overloaded, and if there are no seatbelts, then that's going to be okay. But I imagine an alien smuggler would have people sitting on the floorboards, overloaded, so he can get 100 people in this 50-person capacity bus so he can maximize his profits. And then he wouldn't want it to look like it had 100 people, which would make it even more precarious. He just won't play on my hypothetical. Your Honor, as I indicated, that I think if it was used for its intended purpose and wasn't overloaded, then the enhancement wouldn't apply. Thank you, counsel. You've used your time, and we appreciate your argument. Ms. Lopez, you have some rebuttal time. Thank you, Your Honor. I'd just like to address a couple of issues in regards to the substantial risk. And indicate that there wasn't significant overloading. At supplemental excerpt of record 90, there were six people in a van. There was no speeding. Supplemental excerpt of record in a caravan. And how many does a caravan hold? I'm not sure, Your Honor, but presumably about six, eight people. I don't have any presumptions. I never got one of those mommy cars. I apologize. I don't know either. And supplemental record of five, there was aliens in a Nissan. Two were in the trunk. Two were in the car. That's at 137. Supplemental excerpt of record. And Taurus flora specifically indicates there has to be more than just mere speculation of what risks may occur. There was no speeding. There was no high-speed chase. There was no significant overloading in this case. And finally, as to. How do you know? Oh, because. I mean, as I remember the Z, it was a two-person sports car. The court relied on the March and June 2002 incidents, which were based on the indictment in finding substantial risks. And those supplemental excerpts of records that I cited are the documents provided by the government in support of their sentencing memorandum. And finally, as to the court does not. So was the Z a two-person sports car or not? I'm not sure what incident that was based on. Was it the Z? But that wasn't part of the court's finding for finding substantial risk. The court relied on the PSR and the PSR related on the March and June 2002 incidents. And finally, the court need not reach the vindictiveness issue because there was procedural and significant procedural error in this case when the court relies solely on one factor. And that was that intervening sentence that everyone knew was going to happen. And the court failed to articulate why. Well, if there is a procedural error and the sentence, the net result of the sentence is a reasonable guideline sentence, why isn't it a harmless error? In this case, opposite from many of the cases that this court has heard recently. I mean, if this was a bank robbery case, we wouldn't be having this argument because the sentence could be a pretty substantial range. But in this case, the court previously held 168 months was reasonable and no more than necessary. And then while on appeal, he goes out and gets himself another conviction. No, he doesn't, Your Honor. Well, according to the record I saw, he had the other conviction. No, Your Honor. Was not available at the time of his original sentence. That's not correct, Your Honor. At the time of the original sentence, he had already been convicted of 1326. But did the court know that? The court knew that. He hadn't been sentenced yet, had he? And he had not yet been sentenced. Correct. So now he's been sentenced and the judgment of conviction becomes final. That's correct. But there was no judgment of conviction previously, even though there was a finding of guilt. But there was a finding of guilt. That's not the same as a judgment of conviction when you haven't been sentenced yet. But the court took that conviction, that he had not yet been sentenced, into consideration at the time of the original sentence and gave him one point as a prior sentence. The court, all that was given. It couldn't count as criminal history yet, could it? It could count as one point, and it did. We understand your position and you've exceeded your time. Thank you, Your Honor. Significantly. Thank you, counsel. The case just argued is submitted and we appreciate the arguments of both counsel. The next matter is a consolidated, for argument purposes only, Tan v. Holder and Reynoso Rodriguez v. Holder. We understand that counsel have agreed to split their time evenly on the two matters.
judges: Goodwin, Kleinfeld, Graber